Zelma BOYD et al., Appellants,

v.

WIII G. KNOX, Receiver of and for Allied
Underwriters, Appellee.

No. 15571.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 12, 1954.

Biggers, Baker, Lloyd & Carver and
Alan Griswood, Dallas, for appellants.

Fred Werkenthin and Renne Allred, Jr.,
Austin, for appellee.

MASSEY, Chief Justice.

In 1943, Allied Underwriters, a recip-
rocal inter-insurance exchange operating
under Texas' statutory provisions, was
declared insolvent and a receiver was ap-
pointed to administer its affairs. By a
suit of the receiver, so appointed, a judg-
ment was obtained against Mrs. Frances
M. Tucker, as one of the subscribing mem-
bers of the Allied Underwriters. The suit
was a class action filed against all of the
subscribing members to fix their status as

debtors to the creditors of the Allied Underwriters. It also was a suit to adjudicate each debtor's indebtedness. Mrs. Tucker was not individually cited, but a requisite number of the members of her class were. Indeed, Mrs. Tucker was deceased at the time the suit was filed and her estate was in the process of being administered by an administratrix. Her estate was closed and its proceeds distributed prior to the disposition of the case. The judgment in the class action fixed the status of Mrs. Tucker, or her estate, as a debtor, and also established the amount of the debt. The case went up on appeal, and may be referred to in the Southwestern Reporter. Archie v. Knox, Tex.Civ.App., Austin 1949, 224 S.W.2d 504, writ refused, n. r. e. Judgment in that case became final in the early part of 1950.

On February 12, 1953, the receiver filed suit against the several daughters of Mrs. Frances M. Tucker to collect the amount of the indebtedness fixed by the judgment which had become final the early part of 1950. Since each of the daughters had spent the inheritance received from her mother's estate the suit was directed against each of them rather than against the property received, but in so far as the questions of this case are concerned we can consider that such property was still in their respective hands just as it was on the day it was received. They received the property in early 1949 pursuant to an order of the Probate Court of Tom Green County, Texas. They had held it for approximately one year before the judgment in the class suit became final.

Of course, the receiver could not have brought suit against the property in their hands until the class suit judgment did become final. As a matter of fact the receiver did not know of Mrs. Tucker's death prior to such time, nor did he know that there had been an administration. However, in the early part of 1950, shortly after he was privileged to bring suit against the property in the daughters' hands upon the finality of the judgment in the class action, the receiver caused Dun & Bradstreet, a mercantile credit reporting agency to investigate the circumstances of Mrs. Frances M. Tucker, and received a prompt response from such agency informing him that Mrs. Tucker had died in 1947, that she left a will directing that her property pass per stirpes to her heirs at law, of what the property consisted, and an account of the indebtedness against the estate apparent from the inventory and appraisement, etc. The agency apparently did not discover that an order had been entered distributing the proceeds of the estate to the heirs, though such order had been entered and was of record in the Tom Green County probate court at the time.

In answer to the suit of the receiver the daughters of the deceased interposed the defense of the two-year statute of limitations, reading as follows:

"Art. 5526. Actions to be commenced in two years—There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description: * * * 2. Actions for detaining the personal property of another, and for converting such property to one's own use. 3. Actions for taking or carrying away the goods and chattels of another. * * *" Vernon's Ann.Civ.St. art. 5526.

The defendant daughters advanced the foregoing defense as part of a plea in abatement. The trial court overruled it. At the close of the evidence in the case the said defendants renewed and readvanced the defense in light of the evidence, a part of which disclosed that the receiver was in possession of the information received from Dun & Bradstreet in early 1950, more than two years prior to the institution of the suit.

The trial court overruled the defense as renewed and readvanced and rendered judgment for the receiver against the daughter-defendants for the mother's indebtedness. As we have already noted,

we may here consider that the suit is against the property in their hands. Likewise we can consider the judgment as one of the same character. The defendants appealed and are before us as the appellants.

Judgment reversed and rendered.

■ We believe that the trial court was correct in overruling the two-year plea of limitation presented at the beginning of the trial, but we believe that it erred in overruling such defense when it was renewed and re-presented in light of the evidence. On the face of the pleadings it was not disclosed that the receiver should be charged with notice of the fact that the appellants had received the property the suit was directed against at a time over two years antecedent to its institution. Statutes of limitation are statutes of repose, and their applicability and availability of use by a defendant to defeat a plaintiff depend upon its being made to appear that the plaintiff, having actual knowledge that a limitation period is running against him or having implied knowledge to the same effect, delays too long in filing his suit. The receiver's pleadings did not disclose when he actually knew that he would be required to sue against the property received by the appellants from their mother's estate. However, certain evidence (known only to the receiver prior to the trial) disclosed that the receiver had the information heretofore noted from Dun & Bradstreet for over two years prior to the date the suit was filed. It is our opinion that the receiver was, by reason of his actual knowledge of facts concerning the estate of Mrs. Frances M. Tucker, deceased, through the Dun & Bradstreet report, charged with the duty of exercising reasonable diligence in order to determine whether the property of said deceased had been distributed to the heirs, or when it would be distributed, and that since by any appropriate inquiry he would have ascertained that the proceeds of the estate had already been distributed, a period of limitations was running in favor of the distributees against the receiver from a time shortly after the time

he received the credit report, if not on the day of receipt. The report was received May 29, 1950. Certainly the thirty-two months the receiver delayed in the institution of suit included a two-year limitation period. See 28 Tex.Jur., p. 166, "Limitation of Actions", sec. 76.

So, if we are correct in our conclusion that the receiver was "sleeping on his rights" to bring suit to subject the property in the hands of the appellants to the debt—from the date that he was chargeable with notice that the defendants had the property, the question remains as to whether the two-year statute of limitations was applicable to the character of suit posed and available to the appellants as a defense thereto. If it was, the appellants were entitled to prevail in the trial court and will prevail on appeal.

We believe that a particularly pertinent section of Texas Jurisprudence is correctly determinative of the fact that in so far as the relationship of the parties to the suit is concerned the receiver was a creditor of Mrs. Tucker and her estate, as a third person, and was by the instant suit seeking to gain or subject such third person's property (in the hands of the appellants) to the payment of the debt. From the same section we find support in our belief that under the circumstances of this case it is established as a matter of law that the appellants have held adverse possession of the property for the period provided within the meaning of Article 5526, and that, whether by detention only or conversion, the appellants' title to the property has vested in them and the receiver's claim is barred by the provisions of the two-year statute. 2 Tex.Jur., p. 68, et seq., "Adverse Possession", sec. 36, "Personal Property"; and cases cited thereunder. Of course, as the cited section recognizes, there might be equitable grounds existent in a given case requiring a contrary holding, but there is none apparent here

■ The appellants have cited the case of Young v. Willis, 1885, 63 Tex. 388, as

authority for their contention that a conversion, legal or equitable, took place on the part of the appellants as to the property received by them from their mother's estate in early 1949 when it was distributed to them. In that case the court held that the wife of a deceased converted his personal property (of which she may or may not have held prior possession) immediately upon her husband's death, if it was converted at all; that in so far as her husband's creditor was concerned she had adverse possession of personal property which would have set the two-year statute of limitation running. The receiver contends that the words of the court in this regard constituted dicta. If so, we believe that it is nevertheless sound, and that the distributee of a deceased's estate· who receives and enters into possession of personal property, as his or her distribution, receives it as his own or her own, and he or she holds it as an adverse possession to all other persons in the world absent some equitable qualifying circumstance for which he or she is responsible. In such a case, as to a third person who is claiming or might claim an interest in the property, such a distributee is constructively in the position of detaining the third person's property and converting it to his own use and the two-year statute of limitation would properly be said to be running against such third person.

▮ Of course, limitation in the instant case would not be running from the date the appellants received the property, but from the later date in 1950 when the receiver would be charged with notice thereof, but that date as well was over two years antecedent to the date the receiver filed his suit.

▮ From 9 R.C.L., p. 97, "Descent and Distribution", sec. 95, we observe that the heir may interpose any defense to a creditor's suit that his ancestor could have made if the suit had been brought against him. We also note that the heir might have an additional defense not necessarily available to his ancestor in that the right of the creditors of the ancestor against the heir may be lost by laches or barred by limitation.

In 16 Am.Jur., p. 907, "Descent and Distribution", sec. 125, we see a discussion of the reason for this. "The fact that this rule made titles acquired from heirs uncertain and interfered with the free transfer of real property has caused legislatures to place limitations upon the rule. This has been done in two general ways: (1) By administration proceedings which, under most statutes, cut off claims of creditors of the decedent, and (2) by the enactment of special short term statutes of limitations which bar creditors' claims against the property of the decedent, especially the real property. *After the expiration of the time fixed in such a statute without any attempt by creditors to enforce their claims against the property of the decedent, the claims against such property are lost even in the hands of the heirs.*" (Emphasis ours.)

Exactly such a statute is Article 5526. It fixes a time limitation during which the distributee may be compelled to deliver over to the deceased's creditor the property in his hands which he has received subject to the debt and charged with liability for the payment of the debt. Such period having passed the statutory limitation defense was made available to the appellants. They have interposed it as their defense to the suit of the receiver and are entitled to prevail. See Simkins on Administration of Estates in Texas, Third Edition, p. 205, sec. 152.

Judgment is reversed and· here rendered that the receiver take nothing by his suit.